399 So.2d 671 (1981)
In the Interest of John Wayne FRANKLIN.
No. 14146.
Court of Appeal of Louisiana, First Circuit.
May 26, 1981.
Edselle Cunningham, Baton Rouge, for State of Louisiana.
Kathleen Richey, Baton Rouge, for defendant.
*672 Before COVINGTON, CHIASSON and LEAR, JJ.
COVINGTON, Judge.
This is an appeal from a juvenile proceeding in which John Wayne Franklin was adjudicated a delinquent pursuant to LSA-C.J.P. art. 13, (12) and (7).
The petition alleged in nine counts that John W. Franklin, age 16, was delinquent in that on or about April 29, 1980,

"1.
"said juvenile violated La.R.S. 14:62, in that he participated in the burglary of a 1978 Chevrolet van, Florida license number CCS840, belonging to Topaz, Incorporation and operated by Dana Moseley. Said offense occurred in the 400 block of St. Phillip Street, Baton Rouge, Louisiana;

"2.
"further, on or about April 29, 1980, said juvenile violated La.R.S. 14:62, in that he participated in the burglary of a Chevrolet Monte Carlo, bearing Louisiana license number 341A908, belonging to Deborah Hutzler. Said offense occurred in the 400 block of St. Phillips Street, Baton Rouge, Louisiana;

"3.
"further, on or about April 29, 1980, said juvenile violated La.R.S. 14:62, in that he participated in the burglary of a 1978 Ford van, bearing Louisiana license number T241937, belonging to Brendon Leger. Said offense occurred in the 500 block of St. Phillips Street, Baton Rouge, Louisiana;

"4.
"further, on or about April 29, 1980, said juvenile violated La.R.S. 14:67, in that he participated in the theft of one (1) pair of prescription glasses, valued at $100.00 and (1) ladies' wallet, valued at $30.00, belonging to Brendon Leger. Said offense occurred in the 500 block of St. Phillips Street, Baton Rouge, Louisiana;

"5.
"further, on or about April 29, 1980, said juvenile violated La.R.S. 14:62, in that he participated in the burglary of a 1975 Oldsmobile Cutlass, bearing Louisiana license number 59K372, belonging to Patrick Holloway. Said offense occurred in the 500 block of St. Phillips Street, Baton Rouge, Louisiana;

"6.
"further, on or about April 29, 1980, said juvenile violated La.R.S. 14:62, in that he participated in the burglary of a 1980 Pontiac Grand Prix, bearing Louisiana license number 684B395, belonging to Marcia Dupuy. Said offense occurred in the 500 block of St. Phillips Street, Baton Rouge, Louisiana;

"7.
"further, on or about April 29, 1980, said juvenile violated La.R.S. 14:67, in that he participated in the theft of one (1) purse belonging to Lisa Dupuy and one (1) purse belonging to Janet Major, having a total value of $100.00. Said offense occurred in the 500 block of St. Phillips Street, Baton Rouge, Louisiana;

"8.
"further, on or about April 29, 1980, said juvenile violated La.R.S. 14:62, in that he participated in the burglary of a 1975 Chevrolet Monte Carlo, bearing Louisiana license number 192A997, belonging to Charles White. Said offense occurred in the 500 block of St. Phillips Street, Baton Rouge, Louisiana;

"9.
"further, on or about April 29, 1980, said juvenile violated La.R.S. 14:62, in that he participated in the burglary of a 1974 Oldsmobile Cutlass, bearing Louisiana license number 105X605, belonging to James Barton. Said offense occurred in the 500 block of St. Phillips Street, Baton Rouge, Louisiana; ..."
*673 The trial court found John W. Franklin guilty on counts 3, 4, 6, 7, 8 and 9; he was acquitted on counts 1, 2 and 5, three counts of burglary. Thus, he was convicted on four counts of simple burglary (LSA-R.S. 14:62), and two counts of theft of property, each count of $100.00 or more, having a total value of $230.00 (LSA-R.S. 14:67).
He was adjudicated a delinquent on July 28, 1980, and at the disposition hearing on September 15, 1980, he was committed to the custody of the Louisiana Department of Corrections for a term not to exceed 4 years and 2 months.
On appeal, Franklin urges the following Specifications of Error:
"I. There was a complete lack of evidence as to the offense alleged in count eight of the petition and the trial court erred in denying the defense motion for a direct verdict of acquittal as to count eight.
"II. The State failed to carry its burden of proof beyond a reasonable doubt of all essential elements as to the offenses alleged in counts three, four, six, seven and nine and the trial court erred in denying the defense motion for a directed verdict of acquittal as to these counts."
The appellant first contends that, as to count eight of the petition, the State produced no evidence of the essential elements of the offense charged, which was the burglary on April 29, 1980 of a 1975 Chevrolet Monte Carlo automobile belonging to Charles White while it was parked in the 500 block of St. Phillips [St. Philip] Street.
The United States Supreme Court stated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that in federal habeas corpus cases the standard of review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. The appellant contends that the reasonable doubt standard of review enunciated in Jackson v. Virginia, supra, must be used in the present case. We agree. This State has now adopted the Jackson standard of review when evaluating allegations by defendants that the prosecution presented insufficient evidence to prove an essential element of the crime charged beyond a reasonable doubt. State v. Abercrombie, 375 So.2d 1170 (La.1979), cert. den. ___ U.S. ___, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980); State v. Roy, 395 So.2d 664 (La.1981). Although juvenile proceedings are not "criminal cases," a juvenile is entitled to the protection of the due process clauses of the 14th Amendment to the United States Constitution, and to all the attendant safeguards guaranteed to anyone accused of a crime. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); In the Interest of Day, 378 So.2d 511 (La.App. 4 Cir. 1979); State v. Schexnaydre, 215 So.2d 370 (La.App. 4 Cir. 1968). Likewise, the burden of proving the charges against a juvenile and the standard of review of the sufficiency of the evidence is no less than against an adult. See In the Interest of Day, supra; In the Interest of LaRocca, 363 So.2d 1325 (La.App. 4 Cir. 1978). We find upon review that the State carried its burden of proof.
On the night of April 29, 1980, Detective Pat Walsh, while checking, along with his partner, Detective D'Amico, parked vehicles in the area around the Baton Rouge Centroplex, heard glass breaking in the 400 block of St. Phillips Street. At that time, he observed three or four young black males moving among the vehicles parked at the rear of an L-shaped parking lot in the 400 block of St. Phillips. He again heard the sound of glass breaking as he walked closer to the parking lot. He also radioed for back-up units.
As the detective (who was wearing plain clothes) walked toward them, they moved away, walking to a grassy parking lot behind the 500 block of St. Phillips Street. Detective Walsh testified that he hid behind a vehicle and observed the culprits, who were one-half of a block away from him. From this position, he could see the subjects moving among the parked cars, throwing rocks at the windows, and he could hear glass breaking.
*674 While the officer was observing them, several people walked by the area, causing the subjects to again relocate. The youths walked from the parking lot to the street between the 500 and 600 blocks of St. Phillips Street. As they entered the intersection of that street, they passed into an area which was brightly lit from the lights of the V B C building, so that the officer was able to clearly see the individuals and to identify Franklin as one of the subjects.
After the group walked down the street between the 500 and 600 blocks of that street, Detective Walsh moved from his place of observation. He walked south on St. Phillips to the doorway of a building in the 500 block. As the officer approached the doorway, he saw Franklin, whom he recognized as one of the youths he had observed earlier, standing on St. Phillips Street, at a point at the end of the street which divides the 500 and 600 blocks of that street. Detective Walsh ducked into the doorway of that building and observed the defendant for a period of time. As he watched Franklin, the defendant stood on the corner and looked up and down that street and also the side street. Officer Walsh then instructed the back-up units to move in.
Detective Walsh and his partner walked down St. Phillips Street toward the defendant. Upon seeking the officers approaching him, Franklin yelled and waved to the other black youths, who were on the side street between the 500 and 600 blocks of St. Phillips Street. Following the defendant's warning, the youths ran from the side street and were chased by Detective Wilson and a uniformed officer (who had responded to the radio call), but they were unable to apprehend them. After he had alerted the youths, Franklin then proceeded south on St. Phillips Street toward Steinberg's where he was apprehended by Detective Wilson.
Following testimony in which he identified Franklin as one of the youths observed on the evening of April 29, 1980, Walsh identified the damaged vehicles which he found in the 500 block of St. Phillips Street. He found the windows broken in a 1980 two-door, blue Grand Prix, and a brown over beige Oldsmobile Cutlass. Detective Walsh gave the license plate number of the Oldsmobile and stated it was registered by Mr. Holloway. In his testimony, the detective described the damaged automobiles, giving their license numbers and registered owners. He testified that he returned to the areas where he had observed the youths moving among the parked vehicles and had heard the sound of glass breaking, and found seven vehicles which had been broken into by the subjects. He also found purses, wallets, credit cards, and checkbooks which had been taken from some of the vehicles. Detective Walsh was testifying that the vehicles described in each burglary count of the petition were the same vehicles which he found broken into in the area where he observed the several young persons moving among the parked cars and where he heard the sound of breaking glass, but before the officer could identify Mr. White's car as having been damaged while having been parked beyond the 500 block of St. Phillips Street on the night in question, defense counsel interrupted Detective Walsh's testimony to make the following stipulation:
MRS. RICHEY: Your honor, to expedite this matter, I would stipulate that the damage that has already been testified to, was in fact the damage that this officer would testify to.
Charles White testified that his son, Douglas White, was driving his car on the night of April 29, 1980. Mr. White testified that his car is a two-door, 1975 Monte Carlo. Mr. White stated that when his son returned the car that night, the vent window on the driver's side of the automobile had been broken without his permission. Mr. White's testimony was corroborative of that of Officer Walsh.
The broken window concerning which Mr. White testified to, along with the officer's testimony, was sufficient evidence of an unauthorized entry, since the car was parked in the same area where Detective Walsh observed the group of boys and heard the glass breaking. From the fact *675 that property was taken from several vehicles parked in the same area as the White automobile, and which vehicles had sustained the same damage in entry as had Mr. White's vehicle, it can be inferred that the perpetrators also intended to commit theft from Mr. White's car. Although intent is a question of fact, it need not be proven as a fact and may be inferred from the circumstances surrounding the commission of the offense. State v. Anderson, 343 So.2d 135 (La.1976); State v. Robinson, 315 So.2d 268 (La.1975). The State presented ample evidence that Franklin had the active desire to commit a theft in the White automobile. The State provided sufficient evidence of all essential elements of count eight of the petition, and the Family Court was correct in its judgment. The defense's contention that there was no evidence that Mr. White's vehicle was in the 500 block of St. Phillips Street on April 29, 1980 and that there was no evidence of an unauthorized entry is without merit. By the stipulation, defense counsel admitted that Detective Walsh would have testified that he had seen Mr. White's damaged vehicle on the night of April 29, 1980 when it was parked in the 500 block of St. Phillips Street. From the foregoing, a rational factfinder could have found beyond a reasonable doubt that Franklin participated in the burglary of White's vehicle.
The appellant further argues as to the remaining counts, that the State failed to prove beyond a reasonable doubt that Franklin participated in these burglaries and thefts. The defendant maintains that Detective Walsh did not see Franklin until he was already standing on the corner of St. Phillips Street and the side street which divides the 500 and 600 blocks of St. Phillips Street, when Detective Walsh saw him looking up and down St. Phillips Street and the side street. The record does not support the appellant's position.
Detective Walsh testified that he first observed the boys in the L-shaped parking lot in the 400 block of St. Phillips Street. He could see the youths well enough to observe that they were black, all about the same height, and approximately fifteen to seventeen years old. Detective Walsh stated he observed them in close proximity to a number of the vehicles and could hear glass breaking.
Detective Walsh then observed all of the subjects move to the parking lot behind the 500 block of St. Phillips Street. The parking lots were lit by streetlights and floodlights from the warehouses. Detective Walsh testified that when the subjects moved to the parking lot, he moved to a point of observation which was one-half of a block away from them. He stated that although the grassy parking lot was dimly lit, he could see the subjects moving among the vehicles throwing rocks at the car windows.
The officer further testified that, when passersby approached, all of the subjects who had been in the grassy parking lot then moved to the side street between the 500 and 600 blocks of St. Phillips Street. While they were changing locations, the subjects walked underneath the bright lights of the V B C building which were shining on the corner of the side street. At that point, Detective Walsh could clearly see the subjects and he positively identified Franklin.
The defendant also contends that Franklin could not have been one of the subjects because he did not flee, had no stolen property on his person, and had no glass on his clothing. These are merely factors to argue to the trier of fact and for him to consider in weighing the evidence. They do not necessarily lead to the conclusion that Franklin was not a perpetrator of or a participant in the crimes in question.
The defendant further contends that the State did not prove that Franklin was waving and yelling a warning to the subjects, who were on the side street. The record reflects that Detective Walsh said he saw the subjects move into the side street. The detective then walked to St. Phillips Street where he observed Franklin, whom he recognized as one of the subjects, standing on the corner of St. Phillips Street and the side street. The officer testified he saw the defendant yell and wave in the direction of *676 the other subjects on the side street. The other youths then fled the scene. Franklin, at the trial, denied being involved with the young black males who had burglarized the parked vehicles, stating that he had gone to the concert in the Centroplex. He testified that he left the concert early. He said he stood on the corner for about twenty minutes and watched the police pursue some people. He denied warning the group of youths by waving or yelling. He stated that after standing on the corner, he then proceeded down the street and was arrested by the police.
The appellant asks this Court to utilize the adverse presumption of LSA-R.S. 15:432, because Officers D'Amico and Wilson, who aided Detective Walsh, did not testify. However, both officers were subpoenaed by the State to testify in this matter and were domiciliary served, but failed to appear. Under these circumstances, the presumption of LSA-R.S. 15:432 does not apply; their absences were adequately explained. There is no adverse presumption under such circumstances. The defense was, moreover, given an opportunity to argue the effect of the adverse presumption, if any. Even assuming that the testimony of these officers could be considered adverse to the State, there was sufficient evidence in the record to overcome the rebuttable presumption that this testimony would favor the defendant rather than the State. See LSA-R.S. 15:432; State v. Bonanno, 373 So.2d 1284 (La.1979).
Article 73 of the Code of Juvenile Procedure sets forth in pertinent part the burden of proof imposed upon the State in delinquency proceedings:
"If the petition requests that the child be adjudicated a delinquent, the state shall prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition ...."
In juvenile proceedings, the scope of this court's review extends to both law and fact. La.Const. Art. 5, Section 10; State in Interest of Giangrosso, 385 So.2d 471 (La.App. 1 Cir. 1980). Therefore, we must decide if the Family Court was clearly wrong in its determination that Franklin was proven guilty beyond a reasonable doubt.
After carefully considering the entire record, we conclude that the Family Court was not manifestly erroneous or clearly wrong in its finding that Franklin was guilty as charged beyond a reasonable doubt of the four counts of simple burglary and two counts of theft. See State in Interest of Giangrosso, supra.
Accordingly, the judgment of the Family Court is affirmed.
AFFIRMED.